2021 PA Super 91

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALBERT MIONE AND LISA MIONE | : | |
| | : | |
| Appellants | : | No. 1450 EDA 2020 |

Appeal from the Order Entered June 26, 2020
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
No. 2019-C-2395

BEFORE:   BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.[*]

OPINION BY BENDER, P.J.E.:                    **FILED:  May 10, 2021**

Appellants, Albert Mione and Lisa Mione, appeal from the trial court's June 26, 2020 order granting Appellee's, Erie Insurance Exchange (hereinafter, "Erie"), motion for judgment on the pleadings, and denying Appellants' motion for judgment on the pleadings.  After careful review, we affirm.[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] On December 14, 2020, Erie filed a motion to quash and/or strike Appellants' reply brief, arguing that Appellants filed their reply brief five days late and improperly restated arguments already raised in their initial brief.  **See** Pa.R.A.P. 2185(a)(1) ("A party may serve and file a reply brief permitted by these rules within 14 days after service of the preceding brief but, except for good cause shown, a reply brief must be served and filed so as to be received at least three days before argument."); Pa.R.A.P. 2113(a) (providing that "the appellant may file a brief in reply to matters raised by [the] appellee's brief … and not previously addressed in [the] appellant's brief").  Appellants responded that their reply brief was inadvertently filed late because Erie had

*(Footnote Continued Next Page)*

The trial court summarized the underlying facts, procedural history, and arguments of the parties as follows:[2]

> This case arises out of a dispute over whether … [Appellants] are entitled to underinsured motorist (["]UIM["]) benefits for a motor vehicle accident on July 21, 2018[,] under two policies issued by [Erie].[3]  On July 21, 2018, while operating his 2008 Suzuki GS500F motorcycle, Albert was involved in a motor vehicle accident with a third-party, Cory Huff.  At that time, Albert, Lisa, and Angela S. Mione … resided together.[4]  Albert recovered the applicable policy limits from the tort liability insurer for Cory Huff

---

filed its brief five days early, and Appellants had neglected to change the due date of their reply brief on their calendar.  Appellants further asserted that their reply brief simply responded to points made by Erie and elaborated upon their original arguments.  Upon review, we decline to quash or strike Appellants' reply brief based on the relatively minor defects complained about by Erie, as they do not hinder our review and do not seem to have caused prejudice to Erie in any way.  **See** Pa.R.A.P. 2101 ("Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they **may** be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter **may** be quashed or dismissed.") (emphasis added).

[2] In the future, we respectfully ask the trial court to please not provide the background and rationale for its decision in lengthy, single-spaced footnotes to its order.  **See** Pa.R.A.P. 1925(a) Opinion, 8/28/20, at 3 ("The reasons for this [c]ourt's decision were sufficiently set forth in footnotes one and two of the June 26, 2020 [o]rder, and we incorporate them herein, as if fully set forth.").  Using lengthy, single-spaced footnotes makes it very difficult for us to read.

[3] "[Uninsured motorist coverage (UM)] applies when an insured suffers injury or damage caused by a third-party tortfeasor who is uninsured, whereas UIM coverage is triggered when a third-party tortfeaser [*sic*] injures or damages an insured and the tortfeasor lacks sufficient insurance coverage to compensate the insured in full." **Gallagher v. GEICO Indem. Co.**, 201 A.3d 131, 132 n.1 (Pa. 2019).

[4] Lisa is Albert's wife, and Angela is Albert's daughter.  **See** Appellants' Motion for Judgment on the Pleadings, 1/8/20, at ¶ 4.

- 2 -

and then sought to recover benefits from Erie Auto Policy #Q031507213 issued to Albert and Lisa[,] and Erie Auto Policy #Q093013593 issued to Angela [(collectively referred to herein as "Erie Auto Policies")]. Neither Erie Auto Policy #Q031507213[,] nor Erie Auto Policy #Q093013593[,] listed the 2008 Suzuki GS500F motorcycle as a covered vehicle. Instead, the 2008 Suzuki GS500F motorcycle was insured under Progressive Insurance Company Policy #27195650 (["]Progressive Motorcycle Policy["]).[5]

\*\*\*

On November 6, 2019, Erie filed its *Amended Complaint-Declaratory Judgment.* On November 26, 2019, [Appellants] filed *Defendant[s], Albert Mione and Lisa Mione's Answer to Complaint with New Matter, and Counterclaim for Declaratory Judgment*. On December 4, 2019, Erie filed its *Reply to New Matter and Counterclaim for Declaratory Judgment of Defendants, Albert Mione and Lisa Mione.* The pleadings are closed. On December 13, 2019, Erie filed its *Motion of Plaintiff, Erie Insurance Exchange, for Judgment on the Pleadings*. On January 8, 2020, [Appellants] filed *Defendants, Albert Mione and Lisa Mione's Motion for Judgment on the Pleadings* and *Defendants, Albert Mione and Lisa Mione's, Answer to Motion for Judgment on the Pleadings of Plaintiff, Erie Insurance Exchange*. On January 21, 2020, Erie filed *Plaintiff, Erie Insurance Exchange's, Opposition to Motion for Judgment on the Pleadings of Defendants.* Thereafter, in late January 2020, [Appellants] filed a [r]eply [b]rief, a [s]upplemental [b]rief, and a [p]ost-[a]rgument [b]rief. On March 26, 2020, Erie also filed a [p]ost-[a]rgument [b]rief.

In its *Motion*, Erie contends that [Appellants] are precluded from recovering UIM benefits under Erie Auto Policy #Q031507213[,] and Erie Auto Policy #Q093013593[,] because Albert's 2008 Suzuki GS500F motorcycle is not listed as a covered vehicle on either Erie Auto Policy[,] and both Erie Auto Policies contain a "household exclusion" that bars [Appellants] from recovering UIM benefits for injuries arising out of operation of a non-listed

---

[5] Albert had rejected UIM coverage under the Progressive Motorcycle Policy. **See** Appellants' Brief at 4; Erie's Brief at 5.

miscellaneous vehicle.[6]  Erie further contends that the Supreme Court of Pennsylvania's decision in **Gallagher**[, cited *supra* at note 3 and discussed further *infra*,] is inapplicable in this case because the decision in **Gallagher** involved a situation where the "household exclusion" acted to prevent recovery of stacked UIM benefits even though the plaintiff had paid for stacked UIM coverage on his motorcycle policy and his auto policy, whereas here, Albert did not pay for stacked UIM coverage on his Progressive Motorcycle Policy, but Albert, Lisa, and Angela did pay for stacked UIM coverage on both Erie Auto Policies at issue.[7] Erie contends that this case is governed by the Supreme Court of Pennsylvania's decision in **Eichelman v. Nationwide Ins. Co.**, 711 A.2d 1006 (Pa. 199[8]), where the plaintiff did not pay for UIM coverage on his motorcycle policy and [the] Supreme Court held that the "household exclusion" prevented him from recovering UIM benefits under auto policies issued to members of his household.

In response and in their *Motion*, [Appellants] contend that[,] although the 2008 Suzuki GS500F motorcycle was not listed on either Erie Auto Policy, Erie knew about its presence in the

---

[6] The household exclusion in the Erie Auto Policies states:

This insurance does not apply to:

5. damages sustained by "**anyone we protect**" while "**occupying**" or being struck by a "**miscellaneous vehicle**" owned or leased by "**you**" or a "**relative**," but not insured for Uninsured or Underinsured Motorists Coverage under this policy.

**See** Erie's Amended Complaint, 11/6/19, at Exhibit C (UM/UIM Coverage Endorsement at 3) (emphasis in original).  The definition of "miscellaneous vehicle" in the Erie Auto Policies includes motorcycles.  **Id.** (Auto Insurance Policy at 2).

[7] "The basic concept of stacking is the ability to add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy."  **Erie Ins. Exch. v. Petrie**, 242 A.3d 915, 917 n.2 (Pa. Super. 2020) (citation omitted).  "There are two types of stacking, **intra**-policy and **inter**-policy.  Intra-policy stacking is when more than one vehicle is insured under a single policy of insurance. Inter-policy stacking … is the addition of coverages for vehicles insured under different policies of insurance."  **Id.** (citation omitted; emphasis in original).

household. [Appellants] further contend that it is against public policy and the Motor Vehicle Financial Responsibility Law (["]MVFRL["]), 75 Pa.C.S.[] § 1701 *et seq*., for Erie to completely exclude motorcycles from coverage. [Appellants] contend that the "household exclusion" contained in both Erie Auto Policies is void. [Appellants] further contend that Albert's rejection of UIM coverage on his Progressive Motorcycle Policy does not prevent access to the UIM coverage available under both Erie Auto Policies. [Appellants] contend that Albert did not purchase separate UIM coverage on the Progressive Motorcycle Policy because of the "abundant" UIM coverage purchased under the Erie Auto Policies and that it is inequitable to penalize [Appellants] simply because Albert did not purchase "additional" UIM coverage for his motorcycle. [Appellants] further rely on the proposition that "stacked" UIM coverage is the default coverage available on every insurance policy and that the *Eichelman* decision has been implicitly overruled.

In response, Erie contends that *Eichelman* is still good law because *Eichelman* and *Gallagher* addressed the household exclusion under two factually different circumstances. Erie contends that *Eichelman* upheld the "household exclusion" where "an insured owned and operated a vehicle on which he or she rejected UM/UIM benefits entirely, yet made a claim for such benefits under a household UM/UIM policy which did not insure the occupied vehicle." Erie further contends that *Gallagher* is distinguishable because it involved "stacking" and here, there is no policy for [Appellants] to "stack" Erie UIM benefits on because Albert rejected UIM coverage on his Progressive Motorcycle Policy. Erie further contends that entering judgment in its favor still affords [Appellants] the benefit of the insurance they paid for because they "chose to pay reduced premiums by not insuring the subject motorcycle under either of the Erie [Auto P]olicies, and chose to pay a further reduced premium by rejecting UM/UIM coverage outright on the policy of insurance which listed the motorcycle."

Trial Court Order ("TCO"), 6/26/20, at 1 n.1, 2 n.2 (internal citations omitted).

The trial court granted Erie's motion for judgment on the pleadings, declaring that Appellants are precluded from recovering UIM benefits under the Erie Auto Policies, and denied Appellants' competing request for judgment

on the pleadings. In doing so, the trial court determined that, as a matter of law, Appellants "are precluded from recovering UIM benefits under Erie Auto Policy #Q031507213 issued to Albert and Lisa[,] and Erie Auto Policy #Q093013593 issued to Angela[,] because Albert rejected UIM benefits on his Progressive Motorcycle Policy, which means that there is no underlying policy to 'stack' the Erie Auto Policy benefits onto." *Id.* at 2 n.2. In addition, the trial court found **Gallagher** to be factually distinguishable from Appellants' situation and instead ascertained that "the facts in this case are nearly identical to the facts in **Eichelman**, where the Supreme Court of Pennsylvania enforced the household exclusion because the insured was operating a vehicle covered by an insurance policy that did not provide UIM coverage." **See id.**

Appellants filed a timely notice of appeal from the trial court's order. The trial court subsequently directed Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and they timely did so.

> Presently, Appellants raise the following issue for our review:
>
> Did the trial court err in entering judgment in favor of … Erie … whereby it: (1) held that the household exclusions in the Erie Auto Policies barred the [UIM] claims of Albert…; (2) concluded that the decision of the Pennsylvania Supreme Court in **Gallagher** … was not applicable; and (3) based its decision on elections and waivers under the [Progressive] Motorcycle Policy, in direct contravention of the methodology adopted by the Supreme Court of Pennsylvania for the evaluation of contractual [UIM] claims, rather than focusing on the terms and provisions of the [Erie] Auto Policy, alone?

Appellants' Brief at 2 (some capitalization omitted).

Initially, we note our standard of review for judgment on the pleadings:

Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.

Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well[-]pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

***Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.***, 116 A.3d 87, 91 (Pa. Super. 2015) (citation omitted). "Additionally, we note that interpretation of an insurance policy presents a pure question of law, over which our standard of review is *de novo*." ***Id.*** (citation omitted).

The crux of Appellants' argument on appeal is that the trial court erred in determining that the household exclusions in the Erie Auto Policies barred Appellants' UIM claims given our Supreme Court's decision in ***Gallagher***. Though Appellants concede that, "[o]n its face, the [household] exclusion eliminates coverage for Albert … while operating his motorcycle[,]" ***see*** Appellants' Brief at 19, they insist that ***Gallagher*** invalidated household exclusions in Pennsylvania, and that ***Gallagher's*** rationale applies to the

J-A01005-21

issues in this case. ***See id.*** at 6. In addition, Appellants say that the trial court "failed to employ the methodology adopted by the Supreme Court of Pennsylvania for the evaluation of contractual [UIM] claims" because "[i]n evaluating [UIM] claims, the policies under which claims are being made — in this case the [Erie] Auto Policies — alone, are to be considered." ***Id.*** at 7. Thus, they aver that "[t]he elections and coverages made under any other policy, *e.g.*[,] the [Progressive] Motorcycle Policy, are irrelevant to the analysis. The [t]rial [c]ourt erred in focusing upon the [Progressive] Motorcycle Policy, thereby engaging in a faulty analysis leading to an erroneous conclusion." ***Id.*** Furthermore, by focusing on the Progressive Motorcycle Policy, Appellants say that the trial court "failed to consider the unambiguous policy language of the [Erie] Auto Policies. [It] wrote into the [Erie] Auto Policies provisions that simply do not exist. The [t]rial [c]ourt reasoned that stacking conclusively requires coverage under the [Progressive] Motorcycle Policy. The [Erie] Auto Policies impose no such requirement." ***Id.*** at 17.

At the outset of our review, we acknowledge that this area of the law is not particularly clear and straightforward. Therefore, we take a close look at ***Eichelman***, ***Gallagher***, and the cases decided since ***Gallagher***.

To begin, we turn our attention to ***Eichelman***. As mentioned by the trial court *supra*, Eichelman was injured when his motorcycle was struck by an underinsured driver. ***Eichelman***, 711 A.2d at 1007. Eichelman's motorcycle policy **did not provide UIM coverage** because he had expressly

waived it. *Id.* Eichelman then made claims for UIM coverage under two insurance policies maintained by members of his household, which were denied based on household exclusions in those policies. *Id.* Eichelman subsequently sought a declaratory judgment that he was entitled to benefits under those two policies and that the household exclusions in those policies — which barred UIM coverage for injuries suffered while occupying a vehicle owned by the insured or a relative but not insured for UIM coverage under those particular policies — were invalid on the basis of public policy. *Id.* at 1007, 1008. On review, our Supreme Court concluded that Eichelman could not recover under those two policies, holding that "a person who has voluntarily elected not to carry [UIM] coverage on his own vehicle is not entitled to recover [UIM] benefits from separate insurance policies issued to family members with whom he resides where clear and unambiguous 'household exclusion' language explicitly precludes [UIM] coverage for bodily injury suffered while occupying a motor vehicle not insured for [UIM] coverage." *Id.* at 1010. In reaching that determination, our Supreme Court weighed that "giving effect to the 'household exclusion' in this case furthers the legislative policy behind [UIM] coverage in the MVFRL since it will have the effect of holding [Eichelman] to his voluntary choice." *Id.* It also voiced concerns that, "[i]f [Eichelman's] position were accepted, it would allow an entire family living in a single household with numerous automobiles to obtain [UIM] coverage for each family member through a single insurance policy on one of the automobiles in the household." *Id.* It observed that, "[i]f this

result were allowed, it would most likely result in higher insurance premiums on all insureds (even those without family members living at their residence) since insurers would be required to factor expanded coverage cost into rates charged for [UIM] coverage." *Id.*

Subsequently, in *Gallagher*, Gallagher— who suffered injuries when an underinsured motorist hit him while he was riding his motorcycle — had *stacked UIM benefits* under *both* his motorcycle policy and his auto policy. *Gallagher*, 201 A.3d at 132-33. Gallagher had purchased the two policies from GEICO Indemnity Company. *Id.* GEICO paid Gallagher the policy limits available under his motorcycle policy, but it denied his claim for stacked UIM benefits under his auto policy based on the household exclusion contained in that policy. *Id.* at 133. After litigation ensued to determine whether UIM coverage was available for Gallagher's motorcycle accident under his auto policy, our Supreme Court ascertained that the household exclusion contained in the auto policy violated Section 1738 of the MVFRL "because the exclusion impermissibly acts as a *de facto* waiver of stacked [UM] and [UIM] coverages." *Id.* at 132 (footnote omitted). Section 1738 addresses the stacking of UM and UIM benefits, along with how to waive such coverage, specifically providing, in relevant part, that:

> **(a) Limit for each vehicle.**--When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

- 10 -

**(b) Waiver.**--Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

**(c) More than one vehicle.**--Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b).  The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

**(d) Forms.**--

\*\*\*

(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

**UNDERINSURED COVERAGE LIMITS**

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy.  Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy.  I knowingly and voluntarily reject the stacked limits of coverage.  I understand that my premiums will be reduced if I reject this coverage.

\*\*\*

**(e) Signature and date.**--The forms described in subsection (d) must be signed by the first named insured and dated to be valid.  Any rejection form that does not comply with this section is void.

75 Pa.C.S. § 1738(a)-(e).

In concluding that the household exclusion violated Section 1738, our Supreme Court reasoned:

> Here, it is undisputed that: (1) … the tortfeasor who caused the accident … was underinsured; (2) Gallagher did not sign the statutorily-prescribed UIM stacking waiver form for either of his GEICO policies; and (3) he would have received the UIM coverage that he bought and paid for under both of his GEICO policies pursuant to Subsection 1738(a) of the MVFRL, save for the "household vehicle exclusion" found in an amendment to the [a]utomobile [p]olicy for which no explicit, formal acknowledgement was provided. … [T]his exclusion provides as follows: "This coverage does not apply to bodily injury while occupying or from being struck by a vehicle owned or leased by you or a relative that is not insured for Underinsured Motorists Coverage under this policy."
>
> This policy provision, buried in an amendment, is inconsistent with the unambiguous requirements [of] Section 1738 of the MVFRL under the facts of this case insomuch as it acts as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that Gallagher did not sign the statutorily-prescribed UIM coverage waiver form. Instead, Gallagher decided to purchase stacked UM/UIM coverage under both of his policies, and he paid GEICO premiums commensurate with that decision. He simply never chose to waive formally stacking as is plainly required by the MVFRL.
>
> One of the insurance industries' age-old rubrics in this area of the law is that an insured should receive the coverage for which he has paid. Here, GEICO argues against this maxim by invoking the household vehicle exclusion to deprive Gallagher of the stacked UIM coverage that he purchased. This action violates the clear mandates of the waiver provisions of Section 1738. Indeed, contrary to Section 1738's explicit requirement that an insurer must receive an insured's written acknowledgement that he knowingly decided to waive UM/UIM coverage, the household vehicle exclusion strips an insured of default UM/UIM coverage without requiring an insurer to demonstrate, at a bare minimum, that the insured was even aware that the exclusion was part of the insurance policy. This practice runs contrary to the MVFRL and renders the household vehicle exclusion invalid and unenforceable. In fact, this case is a prime example of why

household vehicle exclusions should not and cannot operate as a pretext to avoid stacking.

Often in these cases, an insurer contends that it should not have to provide stacked coverage when an insured purchases UM/UIM coverage on his motorcycle in Policy A, and then purchases UM/UIM coverage on passenger cars in Policy B. The obvious argument is that the insurer of the passenger cars is unaware of the potentiality of stacking between the car policy and the motorcycle policy. Here, however, GEICO was aware of this reality, as it sold both of the policies to Gallagher and collected premiums for stacked coverage from him. To the extent that GEICO's premium would be higher on an automobile policy because of stacking with a motorcycle policy, all GEICO has to do is quote and collect a higher premium. There simply is no reason that insurers cannot comply with the Legislature's explicit directive to offer stacked UM/UIM coverage on multiple insurance policies absent a knowing Section 1738 waiver and still be fairly compensated for coverages offered and purchased.[6]

[6] We recognize that this decision may disrupt the insurance industry's current practices; however, we are confident that the industry can and will employ its considerable resources to minimize the impact of our holding. For example, when multiple policies or insurers are involved, an insurer can require disclosure of all household vehicles and policies as part of its application process.

For all of these reasons, we hold that the household vehicle exclusion violates the MVFRL; therefore, these exclusions are unenforceable as a matter of law.[7, 8]

[7] Additionally, the Legislature is free to alter the MVFRL to allow this type of exclusion; however, given the MVFRL's conspicuous silence regarding the household vehicle exclusion, we are bound to follow the plain language of Section 1738.

[8] As in every case, we are deciding the discrete issue before the Court and holding that the household vehicle exclusion is unenforceable because it violates the MVFRL. Unlike the Dissent, we offer no opinion or comment on the enforceability of any other exclusion to UM or UIM coverage or to coverage in general, including exclusions relating to racing and other inherently dangerous activities. If, at some later date, the Court is presented with issues regarding the

- 13 -

> validity of other UM or UIM exclusions, then we will address them at that time. Our focus here is narrow, regardless of the Dissent's lament to the contrary.

**Gallagher**, 201 A.3d at 137-38 (internal citations omitted).[8]

Following **Gallagher**, this Court decided **Petrie**, cited *supra* at note 7. In that case, an underinsured driver struck and killed Petrie's husband while he was riding his motorcycle. **Petrie**, 242 A.3d at 917. At the time of the accident, Petrie and her husband had purchased and were named insureds on two insurance policies through Erie and Foremost Insurance. **Id.** The Foremost policy, which insured the motorcycle, provided $25,000 in UIM coverage. **Id.** Petrie successfully claimed UIM benefits from Foremost. **Id.** Petrie then sought UIM benefits from the Erie policy, which covered four other vehicles and had UIM coverage limits for bodily injury of "$100,000 per person/$300,000 per accident-**Unstacked**." **Id.** (emphasis added). The Erie policy also included a household exclusion, which stated that "[t]his insurance does not apply to … damages sustained by 'anyone we protect' while 'occupying' or being struck by a 'miscellaneous vehicle' owned or leased by 'you' or a 'relative,' but not insured for Uninsured or Underinsured Motorists Coverage under this policy." **Id.** at 918 (citation omitted).

---

[8] We note that the Majority Opinion in **Gallagher** makes no mention of **Eichelman**. Moreover, since **Gallagher**, our High Court has discussed **Eichelman** to support the proposition that "there is a balance to be struck between [the] goal [of cost containment] and the remedial purpose of the MVFRL." **Safe Auto Ins. Co. v. Oriental-Guillermo**, 214 A.3d 1257, 1266 (Pa. 2019).

After the trial court granted Erie's motion for judgment on the pleadings, determining that there was no UIM coverage available to Petrie for the motorcycle accident under the Erie policy, Petrie appealed. Upon review, this Court first ascertained that the Erie policy's stacking waiver, which Petrie's husband had signed, did not explicitly provide for inter-policy stacking, so he had not knowingly waived it. **See id.** at 918-21. This Court then considered whether the Erie policy's household exclusion nevertheless precluded coverage. After discussing **Gallagher**, this Court explained that:

> Erie argues that **Gallagher** does not apply because it was a "narrow"[6] decision limited to its facts of that case that are not present here. They contend that, unlike in **Gallagher**, the policies here were from two different companies and the [d]ecedent did not purchase stacking in either policy. However, if it wanted the holding in **Gallagher** to be that narrow, our Supreme Court would have simply held that where you had two different stacked policies from the same insurance company, absent an express waiver conforming to Section 1738, the household exclusion provision did not prevent stacking because the insured paid for stacking in both policies.
>
> > [6] The contention that the decision is narrow comes from footnote 8 in the opinion where it states, "[o]ur focus here is narrow." **Gallagher**, **supra** at 138 n.8. However, that phrase was written to explain that the majority's opinion did not endanger other, non-household coverage exclusions such as "exclusions related to racing and other inherently dangerous activities" and does not narrow the scope of its holding as to the household exclusion. **Id.**
>
> Instead of that narrow holding, our Supreme Court issued a broad holding that the household exclusion provision cannot be used to skirt the express requirement under Section 1738 that an insurer must receive an insured's written acknowledgement that he knowingly decided to waive stacked UM/UIM coverage. That holding is not limited to the facts set forth in **Gallagher**, but one that finds that the exclusion is inconsistent with the requirements of Section 1738 of knowing waiver — a holding that is applicable

to all policies for automobile insurance. Moreover, just because [the d]ecedent did not purchase stacking or the polices are from two different companies is irrelevant because Section 1738 requires a knowing waiver of stacking from whom the insurance is being obtained — in this case, Erie.

Accordingly, because **Gallagher** found the household exclusion provision inconsistent with Section 1738 of the MVFRL requirement that insureds knowingly waive stacked coverage, and … the present stacking waiver provision was not sufficient for an insured to make a knowing decision to waive stacked coverage, the trial court's grant of judgment on the pleadings is reversed and the matter is remanded to the trial court.

**Petrie**, 242 A.3d at 922 (internal citation and footnote omitted).

After **Petrie**, this Court again confronted **Gallagher** in **Erie Ins. Exch. v. King**, 246 A.3d 332 (Pa. Super. 2021).[9] In that case, an uninsured driver struck King's truck while he was driving in it with his paramour's niece, with whom King and his paramour resided. **Id.** at 333-34. King owned the truck, but it was insured under a commercial policy issued to "Night Train Express, Inc.[,]" and it did not name King, or the niece, as insureds. **Id.** at 334. King and his paramour additionally shared an Erie policy for a personal vehicle. **Id.** After King and the niece exhausted the UM benefits available under the truck's commercial policy, they made a UM claim under the Erie policy, which contained a household exclusion and an executed stacking waiver. **Id.** Erie subsequently filed a declaratory judgment action, arguing that coverage was barred due to the household exclusion and/or King's execution of the stacking

_____

[9] We note that the decision in **King** was issued after the parties had already filed their briefs in this case, and neither party mentions **King** in their briefing to this Court.

- 16 -

waiver, and the trial court granted its motion for judgment on the pleadings. *Id.* at 334-35.

On appeal, this Court initially determined that King's execution of a stacking waiver is "irrelevant" because King and the niece cannot "'stack' benefits they receive from Erie with benefits they received from [the truck's commercial policy], where [they] are not 'insureds' under the [truck's commercial] policy." *Id.* at 339 (citations omitted). This Court then addressed their argument that the household exclusion also did not bar coverage, explaining:

> Section 1731 [of the MVFRL] (governing rejection of UM coverage), provides the sole manner in which a person may reject UM coverage.[10] [King and the niece] maintain that any deviation from the rejection form set forth in Section 1731 requires an insurance company to provide UM coverage even where an insured did not pay for such coverage. [King and the niece] insist that under *Gallagher*, the household exclusion cannot be used as a *de facto* rejection of UM benefits where Section 1731 provides the exclusive means for a rejection of UM benefits to occur. [King and the niece] emphasize that premiums were paid to Erie for UM coverage, and Erie should not be able to deprive its insureds of the benefit of that which was purchased. Specifically, [King and the niece] contend: "If under *Gallagher*, the household vehicle exclusion is an invalid means to waive the stacking of [UM] coverage, it should certainly be an invalid means to reject [UM] coverage. There is no reason to draw a distinction."

*King*, 246 A.3d at 339-40 (internal citation and footnote omitted).

---

[10] In short, Section 1731 mandates that UM/UIM coverage be offered to insureds and explains that insureds may reject such coverage by signing a specific written rejection form. 75 Pa.C.S. § 1731. Further, Section 1731(c.1) states that "[a]ny rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits." 75 Pa.C.S. § 1731(c.1).

This Court rejected this argument, deeming it undeveloped and holding that "*Gallagher* does not bar applicability of the household exclusion in this case." *Id.* at 343. We noted that:

> [W]e have already decided that stacking under Section 1738 is not implicated under these facts, where [King and the niece] were guest passengers and not "insureds" under the [commercial] policy covering the [truck] involved in this accident. *We reiterate that because [King and the niece] were not "insureds" under the [truck's commercial] policy, there is no UM coverage on which to "stack" the Erie policy.* Thus, the holding in *Gallagher* — that a household exclusion cannot circumvent the clear requirements of a rejection of stacking set forth in Section 1738 — is not directly applicable here.

*Id.* at 341 (internal citations omitted; emphasis added). Furthermore, in doing so, the *King* Court distinguished *Petrie*, recognizing that,

> in *Petrie*, … this Court interpreted *Gallagher* as a "broad holding that the household exclusion provision cannot be used to skirt the express requirement under Section 1738 that an insurer must receive an insured's written acknowledgment that he knowingly decided to waive stacked UM/UIM coverage" and stated that *Gallagher* "is not limited to [its] facts…, but one that finds that the [household] exclusion is inconsistent with the requirements of Section 1738 of knowing waiver — a holding that is applicable to all policies for automobile insurance." *Petrie*, *supra* at 922 (explaining that just because [the] insured did not purchase stacking, or that policies are from two different companies is irrelevant because Section 1738 requires knowing waiver of stacking from whom insurance is being obtained). Although this Court interpreted *Gallagher* broadly *as applied to Section 1738*, this Court did not consider or decide *Gallagher's* applicability with respect to Section 1731. *See id.*

*Id.* at 342 n.8 (emphasis in original). Based on the foregoing, this Court affirmed the trial court's order granting Erie's motion for judgment on the pleadings.

- 18 -

In light of the above-stated case law, *Gallagher* does not seem to invalidate household exclusions in *all* cases, despite Appellants' suggestions to the contrary.[11]  Instead, *Gallagher* has been interpreted by this Court to hold that a household exclusion cannot be used to evade Section 1738's explicit requirements for waiving stacking.  Thus, the next question for us to decide is whether stacking and Section 1738 are implicated in this case, which would trigger applying the rule set forth in *Gallagher*.

Appellants contend that the rationale of *Gallagher* applies because the Erie Auto Policies "provided stacked coverage, the factual predicate for the application of *Gallagher*."  Appellants' Brief at 21.  They argue that "[t]he household exclusion eliminated the stacking benefit provided by the policy without any knowing waiver by the named insured.  Thus, the *Gallagher* decision applies in this case." *Id.*

Erie, on the other hand, says that stacking, Section 1738 — and consequently *Gallagher* — are irrelevant to this matter.  Instead, Erie maintains that *Eichelman* applies.  It contends:

> *Eichelman*, like this case, doesn't involve two UIM policies being stacked.  *Eichelman*, like this case, involves no coverage on the host vehicle at all.  *Eichelman*, like this case, only involves coverage on household policies.  Thus, there is no host-vehicle UIM policy "to stack" on top of.  As a consequence, "stacking" is not at issue and [Section] 1738 is not relevant or applicable to

---

[11] *See* Appellants' Brief at 9 ("The Supreme Court invalidated household exclusions in *Gallagher*…."); *id.* at 11 ("In *Gallagher*…, the Supreme Court invalidated household exclusions in auto policies in Pennsylvania."); *id.* at 19 ("In *Gallagher*…, the Supreme Court found that household exclusions in automobile policies in Pennsylvania are invalid and unenforceable.").

this case at all. This is precisely the reason why *Eichelman* never cited [Section] 1738, and *Gallagher* never cited *Eichelman*.

Erie's Brief at 19 (footnote omitted).

Additionally, Erie directs our attention to *Dunleavy v. Mid-Century Ins. Co.*, 460 F.Supp.3d 602 (W.D. Pa. 2020), which it claims has identical facts and arguments as the case *sub judice*. Erie's Brief at 22-23.[12] In *Dunleavy*, a husband and wife were riding a motorcycle when they were struck by an underinsured driver, leaving them seriously injured. *Id.* at 605-06. The motorcycle was insured through Progressive, and the husband had rejected UIM coverage under that policy. *Id.* at 606. Additionally, the couple had a separate auto policy from Mid-Century Insurance Company that insured two other vehicles, but not the motorcycle. *Id.* The couple did not sign the statutorily prescribed waiver form to reject stacking in the Mid-Century policy. *Id.* at 607. The Mid-Century policy also had a household exclusion, which stated that UIM coverage does not apply "[t]o bodily injury sustained by you or any family member while occupying or when struck by any motor vehicle owned by you or any family member which is not insured for this coverage under any similar form." *Id.* at 606 (citation omitted). When the couple sought UIM coverage under the Mid-Century policy, Mid-Century told them they were not entitled to UIM coverage because "the [motorcycle] [they] were

_____

[12] "While we recognize that federal district court cases are not binding on this [C]ourt, Pennsylvania appellate courts may utilize the analysis in those cases to the extent we find them persuasive." *Umbelina v. Adams*, 34 A.3d 151, 159 n.2 (Pa. Super. 2011) (citations omitted). We also are mindful that *Dunleavy* was decided before this Court issued its opinions in *Petrie* and *King*.

occupying is owned by [them], [they] did not list it on [their] Mid-Century policy, and [they] did not elect Uninsured/Underinsured Motorist Coverage on the policy through Progressive[.]" *Id.* (citation omitted; some brackets added). After our Supreme Court decided *Gallagher*, the couple sued Mid-Century, alleging, *inter alia*, that Mid-Century's reliance on the household exclusion to deny UIM coverage violated the new rule of law established by *Gallagher*. *Id.* Mid-Century subsequently filed a counterclaim for declaratory judgment regarding the appropriateness of its denial decision, and later a motion for judgment on the pleadings. *Id.*

Before the district court, the couple argued that, "under *Gallagher*, Mid-Century can't use the household vehicle exclusion to deny them the benefit of stacking their [UIM] benefits in the Mid-Century policy[,]" and that "the only way they could be validly denied the benefit of stacking their [UIM] coverage is if they signed a statutorily prescribed waiver form, which they never did." *Id.* at 607. In response, Mid-Century contended that "*Gallagher* is inapplicable because this isn't a stacking case at all[,]" and asserted that the couple has "no [UIM] coverage with which to stack their Mid-Century policy." *Id.* (citation and internal quotation marks omitted). Instead, Mid-Century claimed that the couple was "trying to use the Mid-Century [policy] to establish [UIM] coverage in the first instance." *Id.* at 605. The district court sided with Mid-Century, reasoning:

> When a policyholder buys [UIM] coverage for several vehicles, within or across policies, the law authorizes the policyholder to stack the per-vehicle limits of all that coverage that the

- 21 -

policyholder bought. *Gallagher*, 201 A.3d at 137. An insurer cannot insert an exclusion in the policy that effectively prevents the stacking of limits of covered vehicles by saying there is no coverage for some of those vehicles. *Id.* at 138. But this rationale is predicated on the policyholder buying [UIM] coverage on every vehicle to stack the benefits. That's the fundamental idea behind stacking — the policyholder stacks limits of coverage that he or she paid for. *Id.* ("Gallagher decided to purchase stacked UM/UIM coverage under both of his policies, and he paid GEICO premiums commensurate with that decision."). If the vehicle involved in the accident doesn't have [UIM] coverage, then the policyholder can't stack anything on top of it because the policyholder hasn't paid for that privilege.

∗∗∗

Here, [the couple] concede that [the husband] validly waived [UIM] coverage on his Progressive policy for the motorcycle. So, there is no [UIM] coverage on which to "stack" the Mid-Century policy. Because there is no [UIM] coverage for the motorcycle under the Progressive policy, [the couple has] not properly framed the question for this [c]ourt. The question is not whether [the couple] may stack the Mid-Century policy, but whether [the couple is] entitled to [UIM] coverage under that policy in the first instance. For that question, neither Section 1738 nor *Gallagher* are relevant.

*Dunleavy*, 460 F.Supp.3d at 608, 609 (internal citation omitted).

The district court then determined that the couple did not buy UIM coverage for their motorcycle from Mid-Century, and it addressed the vitality of *Eichelman* following *Gallagher*, opining:

The relevant provision of the MVFRL to this dispute is Section 1731, which generally governs the purchase of [UIM] coverage. *Gallagher* does not affect the application of that statute to the facts here. Rather, it is the Pennsylvania Supreme Court's decision in *Eichelman* … that controls.

∗∗∗

*Gallagher* did not overrule *Eichelman* because the two cases "are not in conflict." Indeed, the Pennsylvania Supreme Court has even cited *Eichelman* approvingly in a case after *Gallagher*.

- 22 -

> ***See*** … ***Oriental-Guillermo***, [cited ***supra***, note 8]. Thus, ***Eichelman*** remains good law and controls the result here.
>
> As in ***Eichelman***, [the husband] waived [UIM] coverage for his motorcycle policy. And, as in ***Eichelman***, [the couple is] trying to obtain [UIM] coverage under a separate policy. That policy, however, clearly states that [UIM] coverage will not apply "[t]o bodily injury sustained by you or any family member while occupying or when struck by any motor vehicle owned by you or any family member which is not insured for this coverage under any similar form." The motorcycle was an "owned" vehicle that was not insured under the Mid-Century policy. As a result, [the couple] are not entitled to [UIM] coverage under the Mid-Century policy.

***Id.*** at 609, 610 (internal citation omitted).

After considering the relevant case law and the arguments of the parties, we agree with Erie and the trial court that stacking and Section 1738 are not implicated in this case. In ***Eichelman***, ***King***, and ***Dunleavy***, stacking was either not discussed or determined to be irrelevant because those individuals who did not have UM/UIM coverage under their host-vehicle policies did not have the requisite UM/UIM coverage on which to stack other household policies with UM/UIM benefits. Similarly, here, Albert's Progressive Motorcycle Policy does not have UIM coverage on which to stack the Erie Auto Policies' UIM benefits. Instead, like the people in ***Eichelman*** and ***Dunleavy***, Albert is using the Erie Auto Policies to procure UIM coverage in the first place.

Therefore, this is not a stacking case, and the rationale of **Gallagher** does not apply.[13, 14]

As we have already determined that **Gallagher** only invalidated household exclusions in cases where they are used to circumvent Section 1738's specific requirements for waiving stacking, we cannot agree with Appellants that **Eichelman** has been overruled and/or does not control here. Accordingly, we apply **Eichelman's** principle that a clear and unambiguous household exclusion is enforceable where the insured was operating a vehicle at the time of the accident that was covered by a separate policy not providing the insured with UM/UIM coverage because the insured had voluntarily, and validly, waived such coverage. Thus, the household exclusions in the Erie Auto Policies are enforceable to preclude Appellants from recovering UIM benefits. No relief is due.

Order affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

_____

[13] We agree with the trial court's observation that, "[h]ad Albert purchased UIM coverage under his Progressive Motorcycle Policy, this case would fall squarely within the factual scenario addressed in **Gallagher**[,] but … that is not the situation before the [c]ourt." TCO at 2 n.2.

[14] Because this is not a stacking case, we disagree with Appellants' arguments that our review must be limited to the policy under which the claim is being made, *i.e.*, the Erie Auto Policies, and that the UIM coverage provided by the Progressive Motorcycle Policy is wholly irrelevant. The **Eichelman**, **King**, and **Dunleavy** Courts all considered the UM/UIM coverage provided by, and the named insureds listed in, the host-vehicle policies.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/10/21