**[J-26-2022]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**BAER, C.J., TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE, | : | No. 89 MAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 1450 EDA |
| | : | 2020 dated May 10, 2021 Affirming |
| v. | : | the Order of the Lehigh County |
| | : | Court of Common Pleas, Civil |
| | : | Division, at No. 2019-C-2395 dated |
| ALBERT MIONE AND LISA MIONE, | : | June 26, 2020. |
| | : | |
| Appellants | : | ARGUED:  September 14, 2022 |

**OPINION**

**JUSTICE WECHT**                                            **DECIDED:  February 15, 2023**

This case concerns the enforceability of two household vehicle exclusions in a pair of automobile insurance policies.  The courts below held that the exclusions were valid and enforceable, citing this Court's 1998 decision in *Eichelman v. Nationwide Insurance Co.*, 711 A.2d 1006 (Pa. 1998).  Appellants here, husband and wife Albert and Lisa Mione, contend that the lower courts erred in applying *Eichelman*, arguing that this Court *sub silentio* overruled that decision in *Gallagher v. GEICO Indemnity Co.*, 201 A.3d 131 (Pa. 2019).  We reject the Miones' argument, and we affirm.

In 2018, Albert Mione ("Mione") was in a collision while operating his motorcycle.  Mione's motorcycle was insured by Progressive Insurance, under a policy that did not include UM/UIM coverage ("the motorcycle policy").[1]  Albert and his wife Lisa ("the

---

[1]      Under the Motor Vehicle Financial Responsibility Law ("MVFRL"), insurers are required to offer their customers uninsured and underinsured motorist coverage

Miones") jointly owned a car, which was insured by Erie Insurance on a single-vehicle policy that included UM/UIM coverage with stacking[2] ("the automobile policy"). Mione's adult daughter Angela also lived in the couple's home, and she too owned a car, which Erie insured on a single-vehicle policy ("Angela's policy").[3] Both of the Erie policies contained household vehicle exclusions barring UM/UIM coverage for injuries sustained while operating a household vehicle not listed on the policy under which benefits are sought.[4]

After Mione's motorcycle collision, the Miones sought benefits from the at-fault driver's insurance company, which paid out the policy's maximum benefit. The Miones then tried to recover UIM benefits from Erie under both the automobile policy and Angela's

---

("UM/UIM"), but the coverage is nevertheless optional. An insured who does not want to purchase UM/UIM coverage can waive it by signing a written rejection form, which is exactly what Mione did when he purchased the motorcycle policy from Progressive. *See* 75 Pa.C.S. §§ 1731(a)-(b).

[2]     "The concept of stacking relates to the ability to add coverages from other vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy." *Everhart v. PMA Ins. Grp.*, 938 A.2d 301, 302 (Pa. 2007).

[3]     The Miones concede that Angela's policy, on its face, provides *unstacked* UM/UIM coverage. Nevertheless, they argue that "a [r]ejection of [s]tacking was never signed for that [a]uto [p]olicy," meaning that Erie "is required to provide stacked coverage." Brief for Miones at 5, n. 1. Erie disputes this, noting that discovery has not yet been exchanged in this case and Erie has expressly denied throughout the pleadings the allegation that Angela did not sign a Section 1738 stacking waiver. Brief for Erie at 7, n. 2 (citing the pleadings). Ultimately, whether Angela's policy includes stacking is irrelevant to our legal analysis.

[4]     The policies contained identical exclusions stating that coverage does not apply to "damages sustained by anyone we protect while occupying or being struck by a motor vehicle owned or leased by you or a relative, but not insured for Uninsured or Underinsured Motorists Coverage under this policy." R.R. 137a (cleaned up); R.R. 116a; *see Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 751-52 (Pa. 2002) (explaining that household exclusions "exclud[e] coverage for an otherwise insured individual when that person is occupying a separately owned vehicle that is not insured under the subject policy").

policy. Erie denied coverage for both claims, citing the household vehicle exclusions in the policies. The company then filed suit in the Lehigh County Court of Common Pleas seeking a declaratory judgment that it was not required to pay the Miones UIM benefits under either of the policies.

Erie eventually filed a motion for judgment on the pleadings, which the trial court granted. The court noted that "the facts in this case are nearly identical to the facts in" *Eichelman*, where this Court rejected the argument that household vehicle exclusions are *per se* unenforceable on public policy grounds.[5]

The appellant in *Eichelman* was struck by an underinsured motorist while operating his motorcycle. The motorcycle was covered on its own policy, issued by Aegis Security Insurance Company ("Aegis"). Though the Aegis policy lacked UM/UIM coverage altogether, Eichelman lived with his mother and her husband. The couple owned two cars, each of which was covered on a Nationwide Insurance policy that included UIM coverage.

When Eichelman tried to collect UIM benefits under his family's Nationwide policies as a resident relative of the named insured, Nationwide denied the claims, citing an exclusion in each policy stating that coverage does not apply to "[b]odily injury suffered while occupying a motor vehicle owned by you or a relative not insured for [UIM] coverage *under this policy*; nor to bodily injury from being hit by any such motor vehicle."[6] Because Eichelman was injured while occupying his motorcycle—a vehicle "not insured for [UIM] coverage under this policy"—it was Nationwide's position that the exclusion unambiguously barred the claim.

---

[5]      Trial Court Order, 6/26/2020, at 3 n. 2.

[6]      *Eichelman*, 711 A.2d at 1007 (emphasis added).

On appeal, our Court unanimously upheld the denial of coverage and rejected Eichelman's argument that the household vehicle exclusion violated public policy. We explained that the exclusion, by its terms, was unambiguous, and we discerned no clear public policy that would require judicial invalidation of the exclusion. We also stated that the cost-containment rationale underlying the MVFRL weighed in favor of enforcing the household vehicle exclusion.

> [U]nderinsured motorist coverage serves the purpose of protecting innocent victims from underinsured motorists who cannot adequately compensate the victims for their injuries. That purpose, however, does not rise to the level of public policy overriding every other consideration of contract construction. As this Court has stated, "there is a correlation between premiums paid by the insured and the coverage the claimant should reasonably expect to receive." *Hall v. Amica Mut. Ins. Co.*, 648 A.2d 755, 761 (Pa. 1994). Here, appellant voluntarily chose not to purchase underinsured motorist coverage. In return for this choice, appellant received reduced insurance premiums.
>
> * * * *
>
> Allowing the "household exclusion" language to stand in this case is further bolstered by the intent behind the MVFRL, to stop the spiraling costs of automobile insurance in the Commonwealth. If appellant's position were accepted, it would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household. If this result were allowed, it would most likely result in higher insurance premiums on all insureds (even those without family members living at their residence) since insurers would be required to factor expanded coverage cost into rates charged for underinsured motorist coverage. Thus, allowing the "household exclusion" language of the two insurance policies at issue to bar recovery by appellant of underinsured motorist benefits is consistent with the intent behind the enactment of the MVFRL.[7]

---

[7] *Eichelman*, 711 A.2d at 1010. This Court has noted many times that one of the General Assembly's goals in enacting the MVFRL was to keep auto insurance premiums low. *See, e.g., Heller v. Pa. League of Cities & Muns.*, 32 A.3d 1213, 1221 (Pa. 2011) (stating that the "dominant and overarching public policy" of the MVFRL is cost containment). Nevertheless, we have also warned courts against reflexively resorting to the MVRFL's cost containment rationale when interpreting ambiguous provisions of the law. *Id.* at 1222 ("Despite our repeated affirmance of the cost containment policy

Returning to the case before us, the trial court below reasoned that the household vehicle exclusion in the Miones' automobile policy was unambiguous and enforceable. Like the *Eichelman* court, the trial court emphasized that Mione had waived UIM coverage for his motorcycle, meaning that the public policy of cost containment would be furthered by enforcing the household vehicle exclusion.[8]

The trial court also rejected the Miones' argument that this Court's 2019 decision in *Gallagher* compelled a different result. *Gallagher* involved a motorcyclist who was hit by an underinsured driver. At the time of the collision, GEICO insured the motorcycle under a policy that included $50,000 of UM/UIM coverage. Gallagher also owned two automobiles, which GEICO insured under a separate policy that included UM/UIM coverage of $100,000 per vehicle. Both of these GEICO policies included stacking.

After Gallagher's collision, he filed claims under both policies. GEICO paid the $50,000 motorcycle-policy claim, but then rejected Gallagher's claim for stacked benefits under the automobile policy, citing a household vehicle exclusion that barred coverage for injuries sustained while operating a household vehicle "that is not insured for [UIM] Coverage *under this policy.*"[9] The lower courts enforced this exclusion and sided with GEICO, citing this Court's 2008 decision in *Erie Insurance Exchange v. Baker*,[10] where

underlying the MVFRL, we have cautioned that it has limits."); *Safe Auto Ins. Co. v. Oriental-Guillermo*, 214 A.3d 1257, 1266 (Pa. 2019) ("While we have repeatedly recognized the goal of cost containment, we have consistently observed that there is a balance to be struck between that goal and the remedial purpose of the MVFRL.").

8    Trial Court Order, 6/26/2020, at 3-4 n. 2 ("[G]ivng effect to the 'household exclusion' further[s] the legislative policy behind the MVFRL because it holds [Mione] to his voluntary choice of not purchasing UIM coverage under his Progressive Motorcycle Policy[.]").

9    *Gallagher*, 201 A.3d at 133 (emphasis added).

10    972 A.2d 507 (Pa. 2008) (OAJC), *overruled by Gallagher v. GEICO Indem. Co.*, 201 A.3d 131 (Pa. 2019).

we held that household vehicle exclusions are not "disguised waiver[s]" of stacking that skirt the MVFRL's express waiver requirements.

On appeal, this Court held (in a departure from *Baker*) that GEICO's household vehicle exclusion "is inconsistent with the unambiguous requirements [of] Section 1738 of the MVFRL" because "it acts as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL."[11] Thus, the Court stated, insurers must "comply with the Legislature's explicit directive to offer stacked UM/UIM coverage on multiple insurance policies absent a knowing Section 1738 waiver."[12]

The trial court below distinguished *Gallagher*, noting that Mione lacked UM/UIM coverage on his motorcycle, whereas the insured in *Gallagher* had purchased UM/UIM coverage for his motorcycle. In the trial court's view, because there was no UM/UIM coverage on Mione's motorcycle policy, the Miones' claim under the automobile policy does not implicate stacking (or *Gallagher*) at all, since there is no underlying coverage upon which to "stack" the automobile policy.[13]

Mione appealed to the Superior Court, arguing that *Gallagher* invalidated all household exclusions in Pennsylvania, and that the decision's rationale applies equally in this case.[14] The Superior Court affirmed the trial court, concluding that "stacking and Section 1738 are not implicated in this case" because Mione did not have UM/UIM coverage under his "host-vehicle" policy and therefore "did not have the requisite UM/UIM

---

[11]     *Gallagher*, 201 A.3d at 138.

[12]     *Id.*

[13]     Trial Court Order, 6/26/2020, at 4 n. 2 ("Had [Mione] purchased UIM coverage under his Progressive Motorcycle Policy, this case would fall squarely within the factual scenario addressed in *Gallagher* but, that is not the situation before the [c]ourt.").

[14]     *Erie Ins. Exch. v. Mione*, 253 A.3d 754 (Pa. Super. 2021).

coverage on which to stack other household policies with UM/UIM benefits."[15]  Thus, like the insured in *Eichelman*, the Superior Court concluded that the Miones were "using the Erie Auto Policies to procure UIM coverage in the first place.  Therefore, this is not a stacking case, and the rationale of *Gallagher* does not apply."[16]  The Superior Court also rejected the argument that *Gallagher* implicitly overruled *Eichelman*, explaining that "*Gallagher* only invalidated household exclusions in cases where they are used to circumvent Section 1738's specific requirements for waiving stacking."[17]

The Miones then petitioned for allowance of appeal, which we granted in order to consider whether the lower courts erred in distinguishing *Gallagher* and applying *Eichelman*.  The gist of the Miones' argument before this Court is that *Gallagher* overruled *Eichelman sub silentio*.[18]  The Miones also take issue with the Superior Court's basis for distinguishing *Gallagher.*  In the Miones' view, it is irrelevant that, unlike in *Gallagher*, the motorcycle policy here did not include UM/UIM coverage in the first instance.  According to the Miones, the decisive fact in *Gallagher* was that "the policy under which [the] claim [was] made provided stacked underinsured motorist benefits," which is also true in this case.[19]  Thus, the Miones argue that *Gallagher*'s "*de facto* waiver" rationale applies equally here, and that *Eichelman* is no longer good law in a post-*Gallagher* world.

The Miones also claim that the lower courts erred in even considering the terms of the motorcycle policy at all.  The couple cites our decision in *Craley v. State Farm Fire &*

---

[15]    *Id.* at 768.

[16]    *Id.*

[17]    *Id.*

[18]    Brief for the Miones at 33 ("*Eichelman* retains no vitality in the post-*Gallagher* world.").

[19]    *Id.* at 53.

*Casualty Co.*, 895 A.2d 530 (Pa. 2006), which they contend stands for the proposition that the only relevant coverage elections are those of *the policy under which coverage is being sought.*[20] Thus, in the Miones' view, the Superior Court disregarded *Craley* when it relied upon the fact that Mione's "host-vehicle policy" (*i.e.*, the motorcycle policy) lacked UM/UIM coverage.[21]

Erie, on the other hand, agrees with the lower courts that *Eichelman* is binding precedent, and that *Gallagher* is factually distinguishable because Mione waived UM/UIM coverage on his motorcycle policy, whereas the insured in *Gallagher* did not. Erie therefore phrases the issue before us as "whether a claimant that failed to insure a household vehicle for UM/UIM benefits should nevertheless be allowed to recover UM/UIM benefits from household policies despite the presence [of] an unambiguous 'household exclusion' contained therein."[22]

Our analysis here turns upon Section 1738 of the MVFRL, which states that, when multiple vehicles are insured under one or more policies, any UM/UIM coverage is stacked by default. This means that the amount of coverage "shall be the sum of the limits for each motor vehicle as to which the injured person is an insured."[23] While stacked

---

[20]    Brief for the Miones at 23 ("[I]n evaluating a contractual UIM claim, it is the contract under which benefits are sought which is relevant; the terms and elections made under other policies, *i.e.* the Motorcycle Policy, are of no significance."); *Craley v. State Farm Fire & Cas. Co.*, 895 A.2d 530, 533 (Pa. 2006) ("[T]he Craleys sought uninsured motorist benefits under Randall Craley's motor vehicle insurance policy. . . . It is Randall's policy and its exclusions that are relevant to the legal issues presented in this case.") (footnote omitted).

[21]    *Mione*, 253 A.3d at 768.

[22]    Brief for Erie at 6.

[23]    75 Pa.C.S. § 1738(a).

coverage is the default, an insured nevertheless may waived stacked coverage limits by signing a written waiver form, the text of which is dictated by Subsection 1738(d).[24]

In *Gallagher*, this Court concluded that enforcing a household vehicle exclusion under the circumstances of that case would conflict with Section 1738's explicit waiver regime, where stacking is assumed to be included in a policy unless the named insured explicitly waives it in accordance with the statute. In so ruling, the Court underscored that "Gallagher decided to purchase stacked UM/UIM coverage *under both of his policies*, and he paid GEICO premiums commensurate with that decision."[25] Thus, the holding turned on the fact that "Gallagher did not sign the statutorily-prescribed UIM stacking waiver form for either of his GEICO policies" and the fact that "he would have received the UIM coverage that he bought and paid for under both of his GEICO policies pursuant to Subsection 1738(a) of the MVFRL, save for the 'household vehicle exclusion[.]'"[26]

Here, unlike in *Gallagher*, the Miones are not attempting to stack anything at all. They have not yet received any UIM benefits, but their theory is that one or both of the household policies can provide UIM coverage *in the first instance*. The problem with that argument is that the policies explicitly exclude UM/UIM coverage for damages sustained while operating an unlisted household vehicle. Those exclusions do not conflict with Section 1738 of the MVFRL. Unlike in *Gallagher*, the exclusions here do not act as *de*

---

[24]    75 Pa.C.S. § 1738(d)(1) ("The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form . . . .); *id.* § 1738(b) ("Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.").

[25]    *Gallagher*, 201 A.3d at 138 (emphasis added).

[26]    *Id.* at 137.

*facto* waivers of *stacking*. In other words, because the Miones are not attempting to stack UIM benefits from the household policies on top of UIM benefits from the motorcycle policy, Section 1738's rules for waiving stacking—which were the basis for this Court's decision in *Gallagher*—are simply not implicated.

We reiterate today that the holding in *Gallagher* was based upon the unique facts before us in that case, and that the decision there should be construed narrowly.[27] The insured in *Gallagher* was attempting to stack (inter-policy) the coverage limits from his automobile policy on top of the coverage limits for his motorcycle policy. He was also attempting to stack (intra-policy) the coverage limits for each of the two vehicles on his household automobile policy. It was only when confronted with those unique facts that this Court concluded that enforcing the exclusion would be "inconsistent with the unambiguous requirements [of] Section 1738 of the MVFRL[.]"[28]

In contrast, when an insured seeks UM/UIM benefits under a household policy but does not have UM/UIM coverage on the vehicle that he or she was occupying at the time of the collision, it cannot be said that a household vehicle exclusion in the UM/UIM-containing policy is operating as the sort of disguised waiver of *stacking* that was disapproved in *Gallagher*. Rather, in such circumstances, the household vehicle exclusion serves as an unambiguous preclusion of *all* UM/UIM coverage (even unstacked coverage) for damages sustained while operating an unlisted household vehicle.

We disagree with the Miones that this approach conflicts with the general contract-law principle that the only relevant coverage selections in a UM/UIM case are those of

---

[27] *See Gallagher*, 201 A.3d at 139 n. 8 ("As in every case, we are deciding the discrete issue before the Court and holding that the household vehicle exclusion is unenforceable because it violates the MVFRL."); *id.* ("Our focus here is narrow[.]").

[28] *Id.* at 138.

the policy under which benefits are being sought.[29]  It is of course true that the terms of the Miones' automobile policy govern whether benefits are payable under that policy, just as the terms of Angela's policy dictate the scope of coverage for that policy.  But those policies contain household vehicle exclusions.  And to know whether or not the exclusions can be enforced per *Gallagher*, we must first determine whether they are impermissibly acting as *de facto* waivers of stacking.  It is only for this limited purpose—to determine whether the insured is actually attempting to stack coverage at all—that we look to what the Superior Court called the "host-vehicle policy."[30]  This methodology in no way conflicts with *Craley*.  Our approach merely recognizes that, for a household vehicle exclusion to be acting as an impermissible *de facto* waiver of stacking, the insured must have received UM/UIM coverage under some other policy first, or else Section 1738 is not implicated at all.

As interpreted in *Gallagher*, the MVFRL precludes any clause that acts as a disguised waiver of stacking by skirting Section 1738's express waiver requirements.[31] Because that holding was based on the unambiguous text of the MVFRL, we need not weigh other interpretive factors, like the law's remedial purpose or its underlying cost-containment rationale.[32]  Nevertheless, we highlight that the Miones' argument, if we

---

[29]  *Craley*, 895 A.2d at 533; *see Stockdale v. Allstate Fire & Cas. Ins. Co.*, 441 F. Supp. 3d 99, 105 (E.D. Pa. 2020) ("Per the Pennsylvania Supreme Court's decision in *Craley*, it is the coverage elections for the policy under which coverage is being sought that are controlling, not the coverage elections of the person seeking coverage.").

[30]  *Mione*, 253 A.3d at 768.

[31]  *Gallagher*, 201 A.3d at 138 (concluding that the exclusion in Gallagher's automobile policy was "inconsistent with the unambiguous requirements [of] Section 1738 of the MVFRL under the facts of this case insomuch as it acts as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL").

[32]  *See supra* note 7.

accepted it, would create a system prone to abuse. One could waive the (expensive) UM/UIM coverage on one's motorcycle policy with one insurer, knowing full well that one has ample UM/UIM coverage on another (less expensive) household automobile policy with another insurer. As we have said in the past, interpretations of the MVFRL that open the door to such abuses are strongly disfavored, unless the plain language of the statute clearly states otherwise.[33]

In sum, we continue to reject the view that household vehicle exclusions are *ipso facto* unenforceable.[34] *Gallagher* did not undermine *Eichelman*'s central holding in that regard; it simply held that a household vehicle exclusion cannot conflict with Section 1738 by purporting to take away coverage that the law says is mandatory unless waived using a specific form. In cases where the exclusion does not interfere with the insured's ability to stack UM/UIM coverage, *Gallagher*'s *de facto* waiver rationale is not applicable. Thus, we conclude that the lower courts correctly distinguished *Gallagher* and correctly enforced the exclusions in the Miones' household policies.

We affirm.

---

[33] *Heller*, 32 A.3d at 1222 ("[T]his Court has declined to invalidate policy exclusions that would provide a disincentive to purchase insurance by allowing an insured to expand coverage at the expense of the insurer."); *Eichelman*, 711 A.2d at 1010 ("If appellant's position were accepted, it would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household."); *Windrim v. Nationwide Ins. Co.*, 641 A.2d 1154, 1158 (Pa. 1994) (noting that, under the insured's proposed interpretation, "many individuals owning several vehicles will purchase coverage for only one of them," which "[c]learly, the General Assembly did not envision nor intend"); *accord* 1 Pa.C.S. § 1922(1) ("[T]he General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.").

[34] *Eichelman*, 711 A.2d at 1010 ("[I]t is beyond judicial authority to declare the clear and unambiguous "household exclusion" language in the policies issued by appellee to be void as against public policy.").

Chief Justice Todd and Justices Donohue, Dougherty, Mundy and Brobson join the opinion.

The Late Chief Justice Baer did not participate in the decision of this matter.