J-A08037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LLOYD COLEBANK, JANET COLEBANK | : | |
| AND ERIC COLEBANK | : | |
| | : | No. 1244 WDA 2021 |
| Appellants | : | |

Appeal from the Order Entered September 22, 2021
In the Court of Common Pleas of Fayette County Civil Division at No(s):
1817 of 2019 GD,
2384 of 2019 GD

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED: APRIL 20, 2022**


Lloyd, Janet, and Eric Colebank (collectively, Appellants) appeal from the September 22, 2021, order entered in the Fayette County Court of Common Pleas, granting the motion for judgment on the pleadings filed by Erie Insurance Exchange (Erie) in this declaratory judgment action.  The crux of Appellants' argument is that the trial court erred when it relied upon the policy provisions of a separate insurance policy, issued by a separate insurance carrier, to determine whether coverage was owed by Erie.  Based on the following, we affirm.

The underlying facts, which were stipulated by the parties, are as follows.  Lloyd and Janet are husband and wife, and Eric is their 27-year-old son, who resides with them in Fayette County.  Stipulation of Parties, 2/17/21,

at ¶ 15. On February 2019, Eric was driving his 2016 Jeep Wrangler SUV, which he owned, southbound on Brownsville Road, Jefferson Township, Fayette County, Pennsylvania. *Id.* at ¶ 6. At the same time, the tortfeasor, Wilbert Brown, was operating his vehicle northbound on the same road when he lost control of his vehicle, crossed the center line, and collided with Eric's vehicle. *Id.* at ¶ 7. As a result of the accident, Eric suffered numerous personal injuries, which required several surgeries. *Id.* at ¶ 8. Eric filed a personal injury claim against Brown, who was insured by Allstate Insurance under a policy that provided $25,000.00 in bodily injury liability coverage. *Id.* at ¶¶ 9-10. On behalf of Brown, Allstate tendered the $25,000.00 liability limits to Eric. *Id.* at ¶ 11. Eric, through his counsel, advised Erie of the Allstate tender, and Erie waived subrogation and consented to the settlement with Allstate. *Id.* at ¶ 12. The parties agree that the injuries and damages suffered by Eric as a result of the underlying accident exceeded the $25,000.00 policy limits. *Id.* at ¶ 14.

At the time of the accident, Eric's Jeep was insured under a policy issued to Eric by State Farm (the State Farm Policy).[1] *Id.* at ¶ 16. Eric specifically

_____

[1] The State Farm Policy also insured one other vehicle that Eric owned.

rejected underinsured motorist (UIM) coverage[2] under his State Farm Policy. *Id.* at ¶ 17.

Eric subsequently submitted a claim for UIM coverage to Erie under an insurance policy issued to Lloyd and Janet, that provided for, *inter alia*, UIM benefits in specifically defined circumstances (the Erie Policy).[3] *Id.* at ¶ 18. The Erie Policy insured two vehicles, neither of which was involved in the accident at issue or owned by Eric. *Id.* at ¶ 19. The Erie Policy provides for $100,000.00 of UIM with stacking and two vehicles, for a total of $200,000.00

---

[2] UIM coverage "is triggered when a third-party tortfeaser [*sic*] injures or damages an insured and the tortfeasor lacks sufficient insurance coverage to compensate the insured in full." *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 132 n.1 (Pa. 2019). *See also Erie Ins. Exch. v. Mione*, 253 A.3d 754, 768 n.3 (Pa. Super. 2021), *appeal granted*, ___ A.3d __, 2021 WL 5576704 (Pa. Nov. 30, 2021).

[3] Eric sought relief pursuant to *Gallagher*. In *Gallagher*, as will be discussed in more detail below, the Pennsylvania Supreme Court held that the household vehicle exclusion, contained in the insurance policy, violated the Pennsylvania Motor Vehicle Financial Responsibility Act (MVFRL), 75 Pa.C.S. §§ 1701-1799.7, because the exclusion impermissibly acted as a *de facto* waiver of stacked UIM motorist coverage, and therefore, was not enforceable. *Gallagher*, 201 A.3d at 137-38.

"The basic concept of stacking is the ability to add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy." *Erie Ins. Exch. v. Petrie*, 242 A.3d 915, 917 n.2 (Pa. Super. 2020) (citation omitted). "There are two types of stacking, intra-policy and inter-policy. Intra-policy stacking is when more than one vehicle is insured under a single policy of insurance. Inter-policy stacking . . . is the addition of coverages for vehicles insured under different policies of insurance." *Id.* (citation omitted; emphasis omitted). *See also Mione*, 253 A.3d at 757 n.7.

in UIM benefits. ***Id.*** at ¶ 20. Erie collected premiums from Lloyd and Janet for UIM and stacked UIM benefits under their policy. ***Id.*** at ¶ 26.

The Erie Policy contained the following household exclusion clause in its UIM endorsement:

EXCLUSIONS – What We Do Not Cover

This insurance does not apply to

\* \* \*

4. damages sustained by "**anyone we protect**" while:

a. "**occupying**" or being struck by a "**motor vehicle**" owned or leased by "**you**" or a "**relative**," but not insured for Uninsured or Underinsured Motorists Coverage under this policy. This exclusion does not apply when "**anyone we protect**" is "**occupying**" or struck by a "**motor vehicle**" owned or leased by "**you**" or a "**relative**" that is insured for the Uninsured or Underinsured Motorists Coverage under any other Erie Insurance Group policy; or

b. "**occupying**" or being struck by a "**motor vehicle**" owned or leased by "**you**" or a "**relative**," but not insured for Uninsured or Underinsured Motorists Coverage under this policy.

*Exclusions 4.a. applies only when the STACKED option is selected. Exclusion 4.b. applies only when the UNSTACKED option is selected.*

Response in Opposition to Plaintiff, Erie Insurance Exchange's Motion for Judgment on the Pleadings, 7/23/21, at Exhibit 2, Erie Insurance Auto Insurance Policy, Uninsured/Underinsured Motorists Coverage Endorsement – Pennsylvania at 2-3 (emphasis and italics in original).

Eric also submitted a claim for UIM coverage to the Agency Insurance Company individually and t/d/b/a/ AIC and/or Agency Insurance Company of

Maryland (the Agency) pursuant to a policy issued to Lloyd that provided for, among other coverages, UIM benefits under specifically defined circumstances (the Agency Policy). *See* Stipulation of Parties at ¶ 21. The Agency Policy insured a motorcycle that was not involved in the underlying accident and was not owned by Eric. *Id.* at ¶ 22. The Agency Policy provided for $100,000.00 of UIM coverage. *Id.* at ¶ 23. Lloyd signed a stacking waiver, thereby rejecting stacked limits of UIM coverage under the policy for himself and members of his household. *Id.* at ¶ 24. The Agency collected premiums from Lloyd for UIM benefits under his policy. *Id.* at ¶ 27. The Agency policy also contained an exclusionary provision concerning UIM coverage. *Id.* at ¶ 31.

Eric is considered a "resident relative" within the meaning of the Erie and Agency insurance policies. *Id.* at ¶ 25. Both insurance companies were aware that Eric resided with his parents. *Id.* at ¶¶ 28-29.

In August 2019, Erie instituted a declaratory judgment action against Appellants, seeking a determination that it had no duty to provide UIM coverage to Eric with respect to the February 2019 accident. In response, Appellants filed an answer, new matter, and counterclaims seeking a determination that Erie does have the duty to tender UIM coverage to Eric. Erie filed a reply to Appellants' new matter and answer and new matter to Appellants' counterclaims.

Appellants also filed a declaratory judgment action against the Agency seeking a determination that the Agency has a duty to tender UIM coverage

to Eric. The Agency filed an answer and new matter also requesting a determination that it had no duty to provide Eric with UIM coverage.

In February 2020, Appellants filed a motion to consolidate both matters concerning Erie and the Agency pursuant to Pa.R.C.P. 213. On March 10, 2020, the court granted their motion and consolidated the two cases.

On July 9, 2021, Erie filed a motion for judgment on the pleadings, alleging that: (1) Eric was operating a vehicle owned by him and insured under a different automobile insurance policy (the State Farm Policy) at the time of the underlying accident; (2) Eric knowingly and voluntarily rejected UM[4]/UIM coverage under the State Farm Policy, which insured the Jeep he was driving when the accident occurred; and therefore, (3) Erie did not owe a duty to tender UIM benefits to Eric under the Erie Policy issued to Lloyd and Janet pursuant to applicable Pennsylvania law and the Erie Policy exclusion provision. *See* Erie's Brief in Support of Motion for Judgment on the Pleadings, 7/9/21, at 6 (unpaginated). Erie further averred that *Gallagher* was not controlling because Eric rejected UIM coverage under the State Farm Policy and therefore, stacking was not at issue. *See id.*

Appellants filed a response in opposition to Erie's motion for judgment on the pleadings. They argued: (1) Eric was entitled to UIM benefits because

_____

[4] "UM" refers to "uninsured motorist." "UM coverage applies when an insured suffers injury or damage caused by a third-party tortfeasor who is uninsured[.]" *Gallagher*, 201 A.3d at 132 n.1.

- 6 -

he was injured by an underinsured motorist and stacked UIM benefits were purchased under the Erie Policy for Lloyd and Janet as well as their resident relatives, including Eric; (2) Erie's attempt to denying Eric's claim, which was based upon his rejection of UIM benefits under a separate policy of insurance, was improper under Pennsylvania law as only the policy provisions pertaining to the policy from which coverage was sought were relevant; and (3) the household vehicle exclusion upon which Erie relied was contrary to the MVFRL, and therefore, was void and unenforceable. **See** Appellants' Response in Opposition to Plaintiff, Erie Insurance Exchange's Motion for Judgment on the Pleadings, 7/23/21, at ¶ 19.

The court held oral argument regarding the matter on September 21, 2021. Following the argument, the court entered an order granting Erie's motion. The court also entered judgment in favor of Erie and against Appellants, stating that Erie had no obligation to tender UIM benefits under its policy to Eric in relation to his car accident. **See** Order, 9/21/21, at 2 (unpaginated). Lastly, the court stated: "[It] has applied the persuasive reasoning set forth in ***Erie Insurance Exchange v. Sutherland***, [1113 WDA 2020, 2021 WL 2827321 (Pa. Super. July 7, 2021) (unpub. memo),] and finds that ***Donovan v. State Farm*** [***Mutual Automobile Insurance Company***, 256 A.3d 1145 (Pa. 2021),] is distinguishable from the facts of this case since

- 7 -

the insured did not waive or reject underinsured motorist benefits as [Eric] Colebank did here." Order at 2. Appellants filed this timely appeal.[5]

Preliminary, we note the September 21st order and Appellants' notice of appeal include the two captions and trial court docket numbers – relating to Erie and the Agency as the cases were consolidated. On November 22, 2021, this Court issued a rule to show cause (RTSC) order since the notice of appeal did not comply with **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) (requiring "that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed."), *overruled in part*, **Commonwealth v. Young**, 265 A.3d 462 (Pa. 2021) (reaffirming that Pa.R.A.P. 341 requires separate notices of appeal when single order resolves issues under more than one docket, but holding Pa.R.A.P. 902 permits appellate court to consider appellant's request to remediate error when notice of appeal is timely filed). The RTSC order did note the Pennsylvania Supreme Court has held that filing one notice of appeal from a single order entered at the lead docket for "consolidated civil matters where all record information necessary to adjudication of the appeal exists, and which involves identical parties, claims and issues, does not run afoul of

---

[5] The court directed Appellants to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellants timely complied. The court issued a statement in lieu of Pa.R.A.P. 1925(a) opinion, stating it would rely on the reasoning set forth in its September 21, 2021, order.

*Walker*, Rule 341, or its Official Note." *Always Busy Consulting, LLC v. Babford & Co., Inc.*, 247 A. 3d 1033, 1043-44 (Pa. 2021). Appellants responded on December 1, 2021, arguing that the September 21st order only impacted the case involving Erie and not the Agency. Regarding the case involving the Agency, Appellants asserted the case was settled and discontinued during the pendency of this appeal. *See* Praecipe to Settle and Discontinue, 11/24/21 (Docket No. 2384 of 2019 GD). Appellants further argued, *inter alia*, that, because the September 21st order, only resolved issues involving Erie, *Walker* was inapplicable.[6] The RTSC order was discharged on December 8, 2021, and the issue was referred to the merits panel. Based on the information before us, including the settlement and discontinuance of the Agency suit, Appellants' single notice of appeal does not preclude this Court's appellate jurisdiction, and we now turn to the merits of their claims.

Appellants raise the following two claims on appeal:

1. Whether a rejection of underinsured motorist benefits under a separate policy of insurance can be considered and/or relied upon when determining whether underinsured motorist benefits are available under the policy under which coverage is being sought[?]

2. Whether an insurance carrier can enforce the household exclusion in an automobile insurance policy to preclude

---

[6] Additionally, on November 4, 2021, Appellants sent correspondence to this Court, stating that pursuant to Pa.R.A.P. 908, they believed the Agency and its related parties have no interest in the outcome of this appeal.

underinsured motorist benefits to an injured insured when it is undisputed that the insurance policy at issue provides stacked underinsured motorist benefits[?]

Appellants' Brief at 5.

"Our standard of review over a decision sustaining a judgment on the pleadings requires us to determine whether, on the facts averred, the law makes recovery impossible." **Cagey v. Commonwealth**, 179 A.3d 458, 463 (Pa. 2018). The Pennsylvania Supreme Court has explained:

the same principles apply to a judgment on the pleadings as apply to a preliminary objection in the nature of a demurrer:

All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of this review. The question presented by the demurrer is whether on the facts averred the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

**Id.** at 463 n.2 (citations omitted).

Based on the nature of Appellants' arguments, we will address them together. Appellants first alleges that the court erred when it granted Erie's motion for judgment on the pleadings because it relied upon a provision from Eric's State Farm policy under which coverage is not being sought to determine Erie's obligations under the Erie Policy. Appellants' Brief at 17. Appellants state that pursuant to **Craley v. State Farm Fire & Casualty Co.**, 895 A.2d 530 (Pa. 2006), and **Donovan**, **supra**, the only policy relevant to the matter at issue is the Erie Policy. **See** Appellants' Brief at 18 - 19. They contend that under the terms of the Erie Policy, "Erie promised to pay UIM benefits to the

named insureds and their resident relatives if they were injured by an underinsured motorist up to the amount of UIM coverage purchased." Appellants' Brief at 21. Appellants aver that "Eric fits squarely in the definition of 'anyone we protect' under the Erie Policy[,]" Lloyd and Janet purchased stacked UIM benefits in the total amount of $200,000, Eric exhausted all the applicable insurance coverage available prior to the Erie Policy, and therefore, under the policy's terms, Erie was obligated to provide Eric with UIM benefits for the 2019 accident. **See id.** at 21-22. Appellants contend that Erie's attempt to rely on Eric's rejection of UIM benefits under the State Farm Policy to deny coverage "defies the fundamental tenets of contract law and is inconsistent with Pennsylvania law." **Id.** at 22.

Moreover, Appellants note that UIM benefits are optional under the MVFRL, but if an insured purchases UIM coverage, they should get the benefit for which they paid. **See** Appellants' Brief at 22, *citing* **Gallagher**, **supra**. Likewise, relying on **Nationwide v. Schneider**, 960 A.2d 442 (Pa. 2008), they state that the MVFRL "does not require that UIM benefits be afforded or exhausted under a policy at one level of priority in order to recover UIM benefits from a policy on a lower or different level of priority." Appellant's Brief at 23.

In their second argument, Appellants challenge the household exclusion provision in the Erie Policy because they assert that it is void and unenforceable, and Erie may not use it to avoid providing the stacked UIM

benefits that were purchased under the Erie Policy. **See** Appellants' Brief at 27. Appellants note that in rendering its decision on Erie's motion for judgment on the pleadings, the court improperly relied on **Erie Insurance Exchange v. Sutherland**, 260 A.3d 115, 2021 WL 2827321 (Pa. Super. July 7, 2021) (unpublished memorandum). **See** Appellants' Brief at 27-31. As will be discussed below, the **Sutherland** decision relied on **Eichelman v. Nationwide Ins. Co.**, 711 A.2d 1006 (Pa. 1998), and **Mione**, **supra**. Appellants contend there are "fatal flaws" in **Eichelman**, **Mione**, and **Sutherland**, stating: (1) "the [c]ourts in those cases relied upon provisions of insurance policies that were not at issue, which was improper;" and (2) "the rationale behind the decisions presume a requirement under the [ ] MVFRL that UIM coverage exist on a host vehicle in order to obtain coverage at a different level of priority, which does not exist and is contrary to the holding in **Schneider**. . . ." Appellants' Brief at 32. Appellants also state that **Eichelman**, **supra**, was decided before **Craley**, **supra**, was issued, and it "did not address the validity of the household vehicle exclusion in the context of the [ ] MVFRL." Appellants' Brief at 32-33. Appellants then point to **Gallagher**, **supra**, stating that in that decision, the Supreme Court did address the validity of the household exclusion in terms of the MVFRL and found that the provision was contrary to the statute and not enforceable. **See** Appellants' Brief at 33. Appellants rely on the adage taken from **Gallagher** that an insured should receive the coverage for which they paid. **See id.** at

35-36. They reiterate their earlier argument that Lloyd and Janet purchased stacked UIM benefits under the Erie Policy, and therefore, Eric should qualify as an insured under the policy due to the unenforceable household exclusion provision. *See id.* at 36-37.

Based on the nature of this appeal, it is necessary to explain the relevant legal history concerning UIM coverage and the household exclusion. First, we will examine *Eichelman* and *Gallagher* and their progeny. Then, we will turn to the applicability of *Craley* and *Donovan*.

In *Eichelman*, the plaintiff insured his motorcycle under a certain insurance policy, but he expressly waived UIM coverage. *Eichelman*, 711 A.2d at 1007. The plaintiff resided with his mother and her husband, who each had an insurance policy, on their respective vehicles, with the defendant, Nationwide Insurance Company (Nationwide). *Id.* at 1007 n.3. Both Nationwide policies "provided underinsured motorist coverage for the named insured and any relative who resided with the named insured."[7] *Id.* at 1007. However, the Nationwide policies also included a household exclusion clause, which was similar to the one in the instant case.

While operating his motorcycle, the plaintiff was injured during an accident. *Eichelman*, 711 A.2d at 1007. The plaintiff tried make a claim for

___

[7] Nationwide did not dispute that the plaintiff qualified as a "relative" under the policies. *Eichelman*, 711 A.2d at 1007.

UIM coverage under the Nationwide policies. *Id.* Nationwide denied the claim pursuant to the "household exclusion" clauses in both policies. *Id.* The plaintiff then filed a declaratory judgment action against Nationwide, seeking entitlement to UIM benefits under the two policies. *Id.* The trial court granted summary judgment in favor in the plaintiff. *Id.* On appeal, a panel of this Court reversed, concluding the household exclusion was valid. *Id.* at 1008.

The *Eichelman* Court concluded the household exclusion clause at issue was consistent with the legislative intent behind the MVFRL. *Eichelman*, 711 A.2d at 1010. In support, it provided the following rationale: the purpose of UIM coverage, "protecting innocent victims from underinsured motorists who cannot adequately compensate" them, does not "overrid[e] every other consideration of contract construction." *Id.* To this end, the Court pointed out the plaintiff voluntarily chose not to purchase UIM coverage in return for reduced insurance premiums on his policy, and furthermore, he admitted "he was not aware that his mother and her husband had insurance policies which could have possibly covered him." *Id.* Moreover, the Court noted it was "not readily apparent that [Nationwide] knew of [the plaintiff's] existence when it issued the two insurance policies" to his mother and her husband, nor that his mother and her husband intended to provide UIM coverage to the plaintiff. *Id.* The Court opined, "[G]iving effect to the 'household exclusion' in this case furthers the legislative policy behind underinsured motorist coverage in the

MVFRL since it will have the effect of holding appellant to his voluntary choice."

*Id.* at 1010.

The Court then held:

[A] person who has voluntarily elected not to carry underinsured motorist coverage on his own vehicle is not entitled to recover underinsured motorist benefits from separate insurance policies issued to family members with whom he resides where clear and unambiguous "household exclusion" language explicitly precludes underinsured motorist coverage for bodily injury suffered while occupying a motor vehicle not insured for underinsured motorist coverage.

*Id.* at 1010.

Approximately twenty years after *Eichelman*, the Pennsylvania Supreme Court rendered its decision in *Gallagher*. In that case, the plaintiff was operating his motorcycle when another driver collided with him and caused the plaintiff severe injuries. *Gallagher*, 201 A.3d at 132. At the time of the accident, the plaintiff had two insurance policies with GEICO Indemnity Company (GEICO) — one for his motorcycle and one for his automobiles. *Id.* at 132-33. The plaintiff specifically "opted and paid for stacked UM and UIM coverage when purchasing both policies." *Id.* at 133.

Following the accident, the plaintiff "filed claims with GEICO seeking stacked UIM benefits under both of his GEICO policies." *Gallagher*, 201 A.3d at 133. GEICO paid him the policy limits of UIM coverage available under the motorcycle policy but denied his claim for stacked UIM benefits under the automobile policy. *Id.* GEICO denied coverage based on the belief that the

household vehicle exclusion precluded the plaintiff from receiving stacked UIM coverage pursuant to that policy. *Id.*

The plaintiff then commenced a lawsuit, claiming he was entitled to coverage because he purchased stacked UIM coverage as part of the automobile policy. *Gallagher*, 201 A.3d at 133. The trial court granted summary judgment in favor of GEICO, and on appeal, a panel of this Superior Court affirmed. *Id.* at 135.

The Pennsylvania Supreme Court accepted review on the question of "whether a 'household vehicle exclusion' contained in a motor vehicle insurance policy violates Section 1738 of the [MVFRL,] because the exclusion impermissibly acts as a *de facto* waiver of stacked" UIM motorist coverage. *Gallagher*, 201 A.3d at 132.[8]

_____

[8] The Court summarized the provisions of Section 1738:

Subsection 1738(a) unambiguously states that the limits of coverage for each vehicle owned by an insured "shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." 75 Pa.C.S. § 1738(a). This provision specifically applies "[w]hen more than one vehicle is insured under one or more policies" providing for UM/UIM coverage. *Id.* In other words, stacked UM/UIM coverage is the default coverage available to every insured and provides stacked coverage on all vehicles and all policies.

Under the MVFRL, insureds can choose to waive stacked coverage. [75 Pa.C.S.] § 1738(b). If an insured decides to waive stacked coverage, then the insured's premiums must be reduced to reflect the different cost of coverage. [75 Pa.C.S.] § 1738(c). Importantly, the MVFRL makes clear that to effectuate a waiver of

The **Gallagher** Court held the household vehicle exclusion, in the automobile policy, violated the MVFRL and was not enforceable. **Gallagher**, 201 A.3d at 138. The Court reasoned, *inter alia*, that it was undisputed that the plaintiff "did not sign the statutorily-prescribed UIM stacking waiver form for either of his GEICO policies[.]" **Id.** at 137. The Court determined the household vehicle exclusion

> is inconsistent with the unambiguous requirements Section 1738 of the MVFRL under the facts of this case insomuch as it acts as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that [the plaintiff] did not sign the statutorily-prescribed UIM coverage waiver form. Instead, [the plaintiff] decided to purchase stacked UM/UIM coverage under both of his policies, and he paid GEICO premiums commensurate with that decision. He simply never chose to waive formally stacking as is plainly required by the MVFRL.

**Id.** at 138.

Two years after **Gallagher**, this Court issued **Mione**. There, the defendant was operating his motorcycle when he was involved in an accident. **Mione**, 253 A.3d at 756. The defendant insured the motorcycle with a policy from Progressive, in which he did not pay for stacked UIM coverage. **Id.** at

_____

> UM/UIM coverage, an insurer must provide the insured with a statutorily-prescribed waiver form, which the named insured must sign if he wishes to reject the default provision of stacked coverage. [75 Pa.C.S.] § 1738(d). This waiver provision has the salutary effect of providing insureds with detailed notice and knowledge of their rights to UM/UIM coverage absent such formal waiver.

**Gallagher**, 201 A.3d at 137.

- 17 -

756-57. The defendant lived with his wife and his daughter. *Id.* at 756 n.4. The husband and wife had an automobile policy with Erie, and the daughter had her own separate policy with Erie. *Id.* at 756. Neither of these Erie policies listed the motorcycle as a covered vehicle. *Id.* However, the family paid for stacked UIM coverage on the Erie policies. *Id.* at 757.

Erie filed a declaratory judgment action, arguing the defendant was precluded from recovering UIM benefits under the two Erie policies because: (1) the motorcycle was not listed as a covered vehicle under either Erie policy; and (2) both Erie policies contained a household exclusion clause that barred the defendant "from recovering UIM benefits for injuries arising out of operation of a non-listed miscellaneous vehicle.[ ]" *Mione*, 253 A.3d at 757. Erie claimed the issue was governed by *Eichelman*, in which the plaintiff did not pay for UIM coverage on his motorcycle. *Id.* Furthermore, Erie contended, *Eichelman* was "still good law because *Eichelman* and *Gallagher* addressed . . . two factually different circumstances." *Id.* at 758. Erie then asserted *Gallagher* was not applicable, as the insured in that case had paid for stacked UIM coverage on both his motorcycle and auto policies, whereas the defendant did not pay for stacked UIM coverage on his Progressive motorcycle policy. *Id.*

The trial court agreed with Erie that *Eichelman* governed the matter, and that *Gallagher* was factually distinguishable. *Mione*, 253 A.3d at 758. The court reasoned that the defendant had "rejected UIM benefits on his

- 18 -

Progressive Motorcycle Policy, which means that there is no underlying policy to 'stack' the Erie Auto Policy benefits onto." ***Id.*** The court thus granted Erie's motion for judgment on the pleadings. ***Id.***

The defendant appealed, and this Court affirmed. The ***Mione*** Court first "acknowledge[d] that this area of the law is not particularly clear and straightforward." ***Mione***, 253 A.3d 760. The Court then examined ***Eichelman***, ***Gallagher***, as well as the following decisions issued post-***Gallagher***: ***Petrie***, ***supra***, and ***Erie Insurance Exchange v. King***, 246 A.3d 332 (Pa. Super. 2021).

In ***Petrie***, as summarized in ***Mione***, "an underinsured driver struck and killed [the defendant]'s husband while he was riding his motorcycle." ***Mione***, 253 A.3d at 763 (citation omitted). At the time of the accident, the defendant and her husband had two insurance policies – one through Foremost Insurance (Foremost) on the motorcycle, which provided UIM coverage, and the second through Erie which covered four other vehicles and included unstacked UIM coverage. ***Id.*** The defendant then sought UIM benefits under the Erie policy, and was denied. ***Id.*** The "trial court granted Erie's motion for judgment on the pleadings, determining that there was no UIM coverage available to [the defendant] for the motorcycle accident under the Erie policy[.]" ***Id.***

On appeal, a panel of this Court reversed, "first ascertain[ing] that the Erie policy's stacking waiver, which [the defendant's] husband had signed, did not explicitly provide for inter-policy stacking, so he had not knowingly waived

- 19 -

it." *Mione*, 253 A.3d at 763. The *Petrie* Court then rejected Erie's argument that *Gallagher* did not apply because, unlike in *Gallagher*, the defendant's two policies were from different companies and the defendant did not purchase stacking in either policy. *Id.* The Court reasoned the fact that the defendant "did not purchase stacking or the polices are from two different companies is irrelevant because Section 1738 requires a knowing waiver of stacking from whom the insurance is being obtained — in this case, Erie." *Id.* at 764. The Court then applied *Gallagher* and reversed the grant of judgment on the pleadings. *Id.*

The *Mione* panel next considered *King*, *supra*. *Mione*, 253 A.3d at 764. There, an uninsured driver struck the defendant's truck while he was driving in it with his paramour's niece. *Id.* The defendant owned the truck, but it was insured under a commercial policy, which did not name the defendant or the niece as insureds. *Id.* The commercial policy included UM coverage. *Id.* The defendant and his paramour additionally shared an Erie policy for a personal vehicle. *Id.* After the defendant and the niece exhausted the UM benefits available under the truck's commercial policy, they then made a UM claim under the Erie policy, which contained a household exclusion and an executed stacking waiver. *Id.* Erie subsequently filed a declaratory judgment action, arguing that coverage was barred due to the household exclusion and the defendant's execution of the stacking waiver. *Id.* The trial court granted its motion for judgment on the pleadings. *Id.*

The **King** Court "initially determined that [the defendant's] execution of a stacking waiver is 'irrelevant' because [the defendant] and the niece cannot 'stack' benefits they receive from Erie with benefits they received from [the truck's commercial policy], where [they] are not 'insureds' under the [truck's commercial] policy." **Mione**, 253 A.3d at 764 (citation omitted). The **King** Court then reasoned:

> [B]ecause [the defendant and the niece] were not "insureds" under the [truck's commercial] policy, there is no UM coverage on which to "stack" the Erie policy. Thus, the holding in **Gallagher** — that a household exclusion cannot circumvent the clear requirements of a rejection of stacking set forth in Section 1738 — [was] not directly applicable here.

**Id.** at 765 (citation and emphasis omitted).

After considering the above cases, the **Mione** Court stated:

> **Gallagher** does not seem to invalidate household exclusions in **all** cases, despite [the defendant's] suggestions to the contrary. Instead, *Gallagher* has been interpreted by this Court to hold that a household exclusion cannot be used to evade Section 1738's explicit requirements for waiving stacking. Thus, the next question [was] whether stacking and Section 1738 are implicated in this case, which would trigger applying the rule set forth in **Gallagher**.

**Mione**, 253 A.3d at 765-66 (footnote omitted; emphasis in original). Erie argued "that stacking, Section 1738 — and consequently **Gallagher** — [were] irrelevant to this matter," and instead, that **Eichelman** applied. **Id.** at 766. Erie posited that like **Eichelman**, there was "no host-vehicle UIM policy 'to

- 21 -

stack' on top of." *Id.* Finally, Erie relied on ***Dunleavy v. Mid-Century Ins. Co.***, 460 F.Supp.3d 602 (W.D. Pa. 2020).[9] ***See id.***

The ***Mione*** Court agreed with Erie and the trial court that stacking and Section 1738 were not implicated. ***Mione***, 253 A.3d at 768. The panel opined:

> In ***Eichelman***, ***King***, and ***Dunleavy***, stacking was either not discussed or determined to be irrelevant because those individuals . . . did not have UM/UIM coverage under their host-vehicle policies [and thus] did not have the requisite UM/UIM coverage on which to stack other household policies with UM/UIM benefits. Similarly, here, [the defendant's motorcycle policy] does not have UIM coverage on which to stack the Erie Auto Policies' UIM benefits. Instead, like the people in ***Eichelman*** and ***Dunleavy***, [the defendant] is using the Erie Auto Policies to procure UIM

---

[9] The facts and arguments presented in ***Dunleavy*** were identical to those in ***Mione***. ***See Mione***, 253 A.3d at 766; ***Dunleavy***, 460 F. Supp.3d at 605-07. The injured parties had two separate insurance policies for their motorcycle and automobiles. In ***Dunleavy,*** the federal district court agreed with the insurance company that Gallagher was inapplicable, stating:

> When a policyholder buys [UIM] coverage for several vehicles, within or across policies, the law authorizes the policyholder to stack the per-vehicle limits of all that coverage that the policyholder bought. An insurer cannot insert an exclusion in the policy that effectively prevents the stacking of limits of covered vehicles by saying there is no coverage for some of those vehicles. [This] rationale is predicated on the policyholder buying [UIM] coverage on every vehicle to stack the benefits. That's the fundamental idea behind stacking — the policyholder stacks limits of coverage that he or she paid for. If the vehicle involved in the accident doesn't have [UIM] coverage, then the policyholder can't stack anything on top of it because the policyholder hasn't paid for that privilege.

***Dunleavy,*** 460 F.Supp.3d at 608 (citations and emphasis omitted).

- 22 -

coverage in the first place. Therefore, this is not a stacking case, and the rationale of **Gallagher** does not apply.

**Id.** (footnotes omitted). The panel further concluded **Eichelman** had not been overruled and applied "**Eichelman's** principle that a clear and unambiguous household exclusion is enforceable where the insured was operating a vehicle at the time of the accident that was covered by a separate policy not providing the insured with UM/UIM coverage because the insured had voluntarily, and validly, waived such coverage." **Id.**[10]

At this juncture, we note that in the present matter, the trial court found this Court's unpublished decision in **Sutherland**[11] was persuasive. **See** Order at 2 (unpaginated). There, the defendant was injured while operating his motorcycle, which was covered by a Progressive policy. **Sutherland**, 2021 WL 2827321, at *1. He waived all UIM coverage under that policy. The defendant also had a separate automobile policy with Erie, for which he paid premiums consistent with obtaining stacked coverage. **See id.** The policy also contained a household exclusion clause. **See id.** The defendant requested Erie pay UIM benefits for the motorcycle injuries pursuant to the

---

[10] The panel also stated that had the defendant "purchased UIM coverage under his Progressive Motorcycle Policy, this case would fall squarely within the factual scenario addressed in **Gallagher**[,] but . . . that is not the situation before the [c]ourt." **Mione,** 253 A.3d at 768 n.13.

[11] We point out that the author of the **Sutherland** decision is the same in this memorandum.

automobile policy. ***See id.*** Erie denied the claim and subsequently filed a declaratory judgment action. ***See id.*** The trial court denied Erie's motion for judgment on the pleadings, rejecting Erie's reliance on ***Eichelman***. ***See id.*** at 2. It found that case was no longer controlling precedent following ***Gallagher***, and ***Gallagher*** held that household exclusions violated the MVFRL and were unenforceable. ***See id.***

A panel of this Court reversed, opining:

> [P]ursuant to ***Mione***, we disagree with the trial court's conclusion that ***Eichelman*** has been abrogated by ***Gallagher***. Furthermore, ***Eichelman*** and ***Gallagher*** are not inconsistent, as they address different factual scenarios — saliently, whether an insured has waived or purchased UIM coverage on a vehicle that is involved in an accident or other incident. Here, like the insured in ***Eichelman***, [the defendant] did not purchase UIM coverage in his Progressive policy for his motorcycle. Accordingly, he was not entitled to stacked UIM coverage under [defendant's] Erie policy for the automobiles, as there was no Progressive UIM coverage for the Erie coverage to stack onto. This result is consistent with the MVFRL, as [the defendant] voluntarily chose not to purchase UIM coverage in his motorcycle policy, and in return received reduced insurance premiums. If [the defendant] had purchased UIM coverage in his Progressive motorcycle policy, as well as his Erie automobile policy, then ***Gallagher*** would apply. However, this is the not the actual scenario presented.

***Sutherland***, 2021 WL 2827321, at *10 (emphasis and citations omitted).[12]

---

[12] We acknowledge that ***Sutherland*** is an unpublished decision, but it may be relied upon for its persuasive value. ***See*** Pa.R.A.P. 126(b). Therefore, the trial court did not err in applying its rationale as the case is substantially similar to the instant matter.

With the above authority guiding us, we now turn to the present matter. Contrary to Appellants' arguments, *Eichelman* and *Mione* are, indeed, dispositive as both cases are substantially similar in facts and procedural posture to this case. In all three cases, the insured suffered injuries while operating a vehicle or motorcycle and the individual had explicitly rejected UIM coverage on that host policy. Likewise, the injured individual sought coverage from a separate policy that included stacked UIM coverage and a household exclusion provision. Pursuant to *Eichelman* and *Mione*, since Eric did not purchase UIM coverage for his own policy (the State Farm Policy), he did not have the requisite UIM coverage on which to stack his parents' household policies with UIM benefit. Moreover, *Gallagher* is not applicable and did not invalidate the household exclusion.[13] *See Eichelman*, 711 A.2d at 1010; *Mione*, 253 A.3d at 768. This outcome is consistent with the MVFRL as Eric voluntarily chose not to purchase UIM coverage in his automobile policy, and in return received reduced insurance premiums. *See Sutherland*, *supra*. Accordingly, Appellants' argument fails under *Eichelman* and *Mione*.

We now turn to *Craley* and *Donovan*. As noted by Appellants, *Craley* stands for the principle that "[i]t is [the policy under which the plaintiff sought

---

[13] Additionally, based on our disposition, *Schneider* is not applicable because Eric did not purchase UIM benefits on his own policy and therefore, the level of priority regarding the benefits is of no consequence. *See Schneider*, *supra*.

UIM benefits] and its exclusions that are relevant to the legal issues presented in this case." *Craley*, 895 A.2d at 533.

In *Donovan*, the plaintiff was in an accident while riding his motorcycle, which was insured by a State Farm policy in which he waived stacked UIM coverage. *Donovan*, 392 F.Supp.3d at 547. The plaintiff lived with his mother, who had a separate policy with State Farm for three vehicles. *Id.* He subsequently filed a claim under his mother's automobile policy. *Id.* State Farm, however, denied this claim on the grounds that both the plaintiff and his mother waived stacked UIM coverage in their respective policies. *Id.* at 548, 550.

The plaintiff filed suit in the federal district court, seeking a declaration that he was entitled to UIM benefits under his mother's policy, or inter-policy stacking. *Donovan*, 392 F.Supp.3d at 548. The Court applied Pennsylvania law "[a]s a federal judge sitting in diversity." *See id.* at 552. The Court repeatedly noted that the plaintiff's waiver of stacked coverage in his own policy was not relevant: "[I]t is [the mother's] waiver that has legal significance; [the plaintiff's] waiver is irrelevant." *Donovan*, 392 F.Supp.3d at 549, *citing* *Craley*, 895 A.2d at 533. *See also Donovan*, 392 F.Supp.3d at 548 n.2 ("[The plaintiff] rejected stacked limits for his motorcycle policy, but . . . the waiver accompanying his policy is irrelevant because he is seeking benefits under his mother's policy."). The Court applied *Gallagher* and

concluded the plaintiff was entitled to the UIM coverage in his mother's policy.

*Id.* at 552-53.

The United States Court of Appeals for the Third Circuit filed a petition

for certification of law with the Pennsylvania Supreme Court.  Our Supreme

Court granted the petition on July 24, 2020, on the following issues:

> 1. Is a named insured's signing of the waiver form set out at 75 Pa.C.S. § 1738(d) sufficient to waive inter-policy stacking of underinsured motorist benefits under [the MVFRL], where the policy insures more than one vehicle at the time the form is signed?
>
> 2. If the answer to Question 1 is no, is a household vehicle exclusion contained in a policy in which the named insured did not validly waive interpolicy stacking enforceable to bar a claim made by a resident relative who is injured while occupying a vehicle owned by him and not insured under the policy under which the claim is made?
>
> 3. If the answers to Questions 1 and 2 are no, is the coordination-of-benefits provision in the Automobile Policy nonetheless applicable, such that it limits . . . recovery of underinsured motorist benefits under the policy . . ., or does the lack of a valid waiver of inter-policy stacking render that provision inapplicable?

*Donovan v. State Farm Mut. Auto. Ins. Co.*, 237 A.3d 395 (Pa. 2020).

Although these discrete issues are not raised in the present appeal, we

note *Donovan* and *Mione* differ in the treatment of the policy at issue in each

case.   *Donovan*, citing *Craley*, stated that in determining whether the

plaintiff was entitled to coverage under his mother's policy, the terms of the

plaintiff's own policy were not relevant.  *Donovan*, 392 F.Supp.3d at 548 n.2,

549, 552.  The *Mione* Court, however, specifically looked to the defendant's

motorcycle policy to determine whether he had UIM coverage, in turn to

- 27 -

ascertain whether there was any coverage for the other policies to "stack" onto. *Mione*, 253 A.3d at 768. Thus, in *Mione*, the terms of the first policy were relevant.

Notwithstanding our discussion of *Donovan* above, we conclude *Mione* governs the factual circumstances and the issue presented. *See Commonwealth v. Ingram*, 926 A.2d 470, 476 (Pa. Super. 2007) (Superior Court opinions are binding precedent, which this Court must follow unless and until they are overruled by an *en banc* Superior Court panel or a higher court) (citation omitted).

Nevertheless, we note both *Mione* and *Donovan* observed the law in this area is not entirely clear. *See Donovan*, 392 F.Supp.3d at 549 ("There is little direct authority on the intricacies of inter-policy stacking under Pennsylvania law."); *Mione*, 253 A.3d at 760 ("At the outset of our review, we acknowledge that this area of the law is not particularly clear and straightforward."). As indicated above, the Pennsylvania Supreme Court has granted review in *Donovan* and *Mione*.[14] We suggest the various issues

_____

[14] The Supreme Court granted a petition for allowance of appeal in *Mione* on the following issue:

Did the Superior Court err as a matter of law in determining that the seminal decision of the Court in *Gallagher v. Geico*, 201 A.3d 131 (Pa. 2019), which invalidated household exclusions in auto policies in Pennsylvania, did not apply to the underinsured motorist ("UIM["]) claims of Albert Mione under his Personal Auto Policy merely because the policy insuring the motorcycle he was

discussed above may be clarified by the Pennsylvania Supreme Court on review.

For the foregoing reasons, we conclude **Eichelman** governs the factual circumstances and the issues presented. Pursuant to **Eichelman** and **Mione**, Appellants are not entitled to UIM benefits under their Erie policy in the case *sub judice*. Accordingly, we affirm the trial court's order granting Erie's motion for judgment on the pleadings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2022

---

operating at the time of the accident did not provide [UIM] coverage?

**Erie Ins. Exch. v. Mione,** ___ A.3d ___, 2021 WL 5576704 (Pa. Nov. 30, 2021)